IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARCUS ADRIAN SILVA,

      Plaintiff,

    vs.                         Civ. No. 20-305  JFR

ANDREW SAUL, Commissioner
of SOCIAL SECURITY,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 22) filed October 13, 2020, in support of Plaintiff Marcus Adrian Silva's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration ("Defendant" or "Commissioner") denying Plaintiff's claim for Title XVI supplemental security income.  On December 14, 2020, Plaintiff filed his Motion to Reverse and Remand for a Rehearing With Supporting Memorandum.  Doc. 26.  The Commissioner filed a Response in opposition on February 2, 2021 (Doc. 28), and Plaintiff filed a Reply on February 26, 2021 (Doc. 29).  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  Docs. 4, 10, 11.

# I.  Background and Procedural History

Plaintiff Marcus Adrian Silva ("Mr. Silva") alleges that he became disabled on September 1, 2014, at the age of forty, because of post-traumatic stress disorder ("PTSD"), fibromyalgia, bi-polar disorder, anxiety, chronic back pain, scoliosis and arthritis.  Tr. 205, 208. Mr. Silva completed the ninth grade and attended special education classes while in school.  Tr. 208.  Mr. Silva has worked as a maintenance technician for Comcast, a laborer and warehouse manager for a carpet recycling company, a lube technician for a car dealership, a transporter for an automobile auction company, and a sterile processer for Lovelace Women's Hospital.  Tr. 209, 230-37.  Mr. Silva reported he stopped working on September 1, 2014, because of his alleged impairments.  Tr. 208.

On December 30, 2016, Mr. Silva filed an application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*.  Tr. 180-86.  On March 8, 2017, Mr. Silva's application was denied.  Tr. 68-80, 81, 97-100.  It was denied again at reconsideration on September 6, 2017.  Tr. 82-95, 96 104-07.  Upon Mr. Silva's request, Administrative Law Judge (ALJ) Jeffrey N. Holappa held a hearing on March 28, 2019.  Tr. 27-67.  Mr. Silva appeared in person at the hearing with attorney representative Michelle Baca.[2]  *Id*. On May 1, 2019, ALJ Holappa issued an unfavorable decision.  Tr. 9-21.  Mr. Silva appealed the unfavorable decision to the Appeals Council and on June 24, 2019, the Appeals Council declined review.  Tr. 1-6.  Mr. Silva timely appealed to the United States District Court for the District of New Mexico.  Doc. 1.

---

[2] Mr. Silva is represented in these proceedings by Attorney Laura J. Johnson.

## II.  Applicable Law

### A.   Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities."  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.*  "Gainful work activity is work activity that you do for pay or profit."  20 C.F.R. §§ 404.1572(b), 416.972(b).

C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5. The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

**B.     Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

### III.  Analysis

The ALJ made his decision that Mr. Silva was not disabled at step five of the sequential evaluation. Tr. 19-21. Specifically, the ALJ found that Mr. Silva had not engaged in substantial

gainful activity since the date of his application on November 3, 2016 [sic].  Tr. 14.  The ALJ

determined that Mr. Silva had severe impairments of mild degenerative disc disease of the

lumbar spine, mild thoracic spine scoliosis, chronic pain syndrome, depressive disorder

secondary to reported pain, bipolar disorder, PTSD, antisocial personality disorder, and

generalized anxiety disorder.  Tr. 14.   The ALJ also determined that Mr. Silva had non-severe

impairments of fibromyalgia, hypertension and GERD.  *Id.*  The ALJ determined that Mr. Silva

did not have an impairment or combination of impairments that met or medically equaled the

severity of a listing.  Tr. 15-16.  Proceeding to step four, the ALJ found that Mr. Silva had the

residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) with

the following limitations.

> The claimant retains the functional capacity to perform medium work, lift/carry up
> to 50 pounds occasionally, 25 pounds frequently, sit and stand/walk up to 6 hours
> in an 8-hour day, push/pull as much as lift/carry, but is limited to frequent climbing
> of ramps and stairs, occasional climbing of ladders or scaffolds, and frequent
> balancing, stooping, kneeling, crouching and crawling.  Finally, the claimant is
> limited to simple, routine tasks, simple work-related decisions, attending and
> concentrating for two-hour intervals, occasional interactions with supervisors and
> co-workers, but no interaction with the general public.

Tr. 16.  The ALJ concluded at step four that Mr. Silva was not capable of performing his past

relevant work.  Tr. 19.  At step five, the ALJ found that considering Mr. Silva's age, education,

work experience, residual functional capacity, and the testimony of a VE, there are jobs that exist

in significant numbers in the national economy that Mr. Silva could perform.  Tr. 20.  The ALJ,

therefore, determined that Mr. Silva was not disabled.  Tr. 17.

On appeal, Mr. Silva argues that ALJ Holappa erred by (1) improperly picking and

choosing amongst the findings of the State agency's nonexamining psychological consultants

Howard G. Atkins, Ph.D., and Scott R. Walker, M.D.; and (2) improperly weighing the opinion

of treating psychologist, Gerald Chavez, Ph.D.  Doc. 26 at 11-26.  The Commissioner contends

that the ALJ provided good reasons for weighing the opinion evidence the way he did, and his lengthy and thorough decision is grounded in substantial evidence and free of reversible legal error.  Doc. 28 at 12-23.

For the reasons discussed below, the Court finds that the ALJ failed to apply the correct legal standards in weighing the medical opinion evidence of treating psychologist Gerald Chavez, Ph.D., and that the ALJ's reasons for discounting his opinion are not supported by substantial evidence.  This case, therefore, requires remand.

A.    **Relevant Medical Evidence**

1.    **Mary S. Loescher, Ph.D**.

On February 13, 2017, Mary S. Loescher, Ph.D., conducted a mental health evaluation of Mr. Silva to assist Disability Determination Services in making a disability determination.  Tr. 384-87.  Dr. Loescher reviewed certain of Mr. Silva's medical records, conducted a clinical interview, and administered a mental status exam.  *Id.*  On mental status exam, Dr. Loescher observed that Mr. Silva's dress and appearance were unusual because of his "scorpion" haircut[4] and "vampire" tattoos on his forehead, around his eyes, lips and other parts of his face.  Tr. 385-86.  Dr. Loescher described Mr. Silva as friendly, cooperative and engaged.  *Id.*  Dr. Loescher indicated that Mr. Silva's speech was clearly articulated, with normal rate, rhythm and volume; that his flow of thought was logical and sequential; his mood and affect were within normal limits; and that Mr. Silva was cooperative and engaged in doing tasks related to attention and concentration.  Tr. 386.

---

[4] Dr. Loescher described this haircut as having both sides of the head that are bald with a tail of hair in the back.  Tr. 385.

Based on her review of medical records, clinical interview, and mental status exam, Dr. Loescher diagnosed Mr. Silva with (1) history of polysubstance use disorder by client report; (2) antisocial personality disorder based on client report; and (3) depressive disorder secondary to reported pain.  Tr. 387.  Dr. Loescher assessed that

> . . . Mr. Silva reports a history of being diagnosed with PTSD.  He did not report current symptoms of PTSD that would meet the DSM 5 diagnostic criteria for that disorder.  He does report some depression secondary to pain.  He states that he is being treated for anxiety attacks.  It is possible that his anxiety issues may be connected to his past and or possible current gang involvement.[5]  He reports a history that is diagnostic of antisocial personality disorder.  He reports a history consistent with long term drug use.  He was able to do tasks of attention and concentration with little difficulty and did not have difficulties participating in the consultation.  From a cognitive standpoint he would not be impaired in his ability to understand, remember and follow through on basic work instructions.  He would possibly be impaired in his ability to follow through on more complex work instructions.  He reports a history that is consistent with difficulties interacting with others since elementary school and in his adult life as well in work settings, due primarily because of his lack of tolerance for being told what to do.  He would not be impaired in his ability to use public transportation.  He would be capable of managing his own finances if given benefits.

Tr. 387.

The ALJ accorded partial weight to Dr. Loescher's opinion that Mr. Silva had "mild impairment with complex work instructions (no impairment with basic)."  Tr. 19.

### 2.   Scott Walker, M.D.

On March 7, 2017, nonexamining State agency psychological consultant Scott Walker, M.D., reviewed the medical evidence record at the initial level of review.  Tr. 72-73, 75-78. Dr. Walker prepared a Psychiatric Review Technique ("PRT")[6] and rated the degree of

---

[5] Mr. Silva testified that he has never been involved in a gang and that his tattoos are from prison.  Tr. 55-56.  Mr. Silva challenged Dr. Loescher's reference to gang involvement as biased.  *Id.*

[6] "The psychiatric review technique described in 20 CFR §§ 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and

Mr. Silva's functional limitation in the area of activities of daily living as mild, in the area of

maintaining social functioning as moderate, in the area of maintaining concentration, persistent

and pace as mild, and in the area of adaptation as moderate.  Tr. 72.  Dr. Walker also prepared a

Mental Residual Functional Capacity Assessment ("MRFCA")[7] in which he found in Section I

that Mr. Silva was *moderately limited* in his ability to (1) understand and remember detailed

instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for

extended periods of time; (4) perform activities within a schedule, maintain regular attendance,

and be punctual within customary tolerances; (5) sustain an ordinary routine without special

supervision; (6) work in coordination with or in proximity to others without being distracted by

them; (7) complete a normal workday and workweek without interruptions from psychologically

based symptoms and to perform at a consistent pace without an unreasonable number and length

of rest periods; (8) accept instructions and respond appropriately to criticism from supervisors;

(9) maintain socially appropriate behavior and to adhere to basic standards of neatness and

cleanliness; (10) respond appropriately to changes in the work setting; (11) travel in unfamiliar

places or use public transportation; and (12) set realistic goals or make plans independently of

others.  Tr. 75-77.  Dr. Walker also found that Mr. Silva was *markedly limited* in his ability to

interact appropriately with the general public.  Tr. 76.

---

"paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

[7] The MRFCA form instructions explain: "The questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion.  This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation).  Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box."  Tr. 75.  Case law discussing "Section I" and "Section III" therefore remains relevant.

Dr. Walker then assessed in Section III that

> [o]verall, the totality of the evidence in file supports the conclusion that the claimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, but likely not the general public, and respond appropriately to changes in a routine work setting.

Tr. 78.

The ALJ accorded great weight to Dr. Walker's opinion that Mr. Silva had "moderate limitations in the B criteria and an unskilled/reduced social interactions MRFC." Tr. 19.

### 3.    Howard G. Atkins, Ph.D.

On August 31, 2017, nonexamining State agency psychological consultant Howard G. Atkins, Ph.D., reviewed the medical evidence record at reconsideration. Tr. 86-87, 90-93. Dr. Atkins affirmed Dr. Walker's PRT ratings. Tr. 86-87. As for his MRFCA findings, Dr. Atkins found in Section I that Mr. Silva was *moderately limited* in his ability to (1) interact appropriately with the general public; and (2) accept instructions and respond appropriately to criticism from supervisors. Tr. 91. In making these findings, Dr. Atkins explained that "[c]riticism from supervisor may exacerbate [Mr. Silva's] depression and anxiety." *Id.* In Section III, Dr. Atkins affirmed Dr. Walker's assessment. Tr. 93.

The ALJ accorded great weight to Dr. Atkins' opinion that Mr. Silva had "moderate limitations in the B criteria and an unskilled/reduced social interactions MRFC." Tr. 19.

### 4.    Gerald Chavez, Ph.D.

On April 12, 2018, Mr. Silva began treating with Psychologist Gerald Chavez, Ph.D. Tr. 420-23. Mr. Silva described his chief complaint as "[a] guy broke into my house and I killed him with a knife. 2007."[8] Tr. 420. Mr. Silva reported the history of his present problem as

---

[8] The record reflects that Mr. Silva was convicted of voluntary manslaughter and served his prison time. Tr. 286.

"[a]ge 7 sexual abuse."  *Id.*  On mental status exam, Dr. Chavez observed that Mr. Silva was

well-groomed, cooperative, alert, had normal speech, normal language, normal insight and

judgment, and that his thought processes were organized.  Tr. 422.  Dr. Chavez also observed

that Mr. Silva was hyperactive and agitated.  *Id.*  Dr. Chavez indicated that Mr. Silva reported he

remembers negative things better and has helpless and hopeless thoughts at times.  *Id.*

Dr. Chavez diagnosed PTSD and Generalized Anxiety Disorder.  *Id.*  The record indicates that

Mr. Silva saw Dr. Chavez seven times from April 19, 2018, through September 5, 2018, for

individual cognitive behavioral therapy.  Tr. 413-419.

On January 26, 2019, Dr. Chavez completed a Medical Functional Capacity

Questionnaire on Mr. Silva's behalf.  Tr. 433-37.  Dr. Chavez stated that he began therapy with

Mr. Silva on April 12, 2018, and had met with him on nine occasions.  Tr. 433.  Dr. Chavez

indicated diagnoses of  PTSD and General Anxiety Disorder and that he was treating Mr. Silva

with cognitive behavioral therapy, to which Mr. Silva had responded positively and applied

coping skills.  *Id.*  Dr. Chavez noted that Mr. Silva presented with high levels of anxiety and

hypervigilance, that Mr. Silva had minimal trust of others, and that he was socially

compromised.  *Id.*  Dr. Chavez indicated that Mr. Silva's prognosis was poor.  *Id.*

Dr. Chavez assessed that Mr. Silva was *limited but satisfactory* in his ability to (1) carry

out very short and simple instructions; (2) sustain an ordinary routine without supervision;

(3) make simple work-related decisions; (4) perform at a consistent pace without an

unreasonable number and length of rest periods; (5) ask simple questions or request assistance;

(6) respond appropriately to changes in a routine work setting; (7) deal with normal work stress;

(8) be aware of normal hazards and take appropriate precautions; and (8) adhere to basic

standards of neatness and cleanliness.  Tr. 435, 436.  Dr. Chavez also assessed that Mr. Silva was *seriously limited but not precluded* in his ability to (1) remember work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) maintain regular attendance and be punctual within customary, usually strict tolerances; (5) work in coordination with or proximity to others without being unduly distracted; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms; (7) accept instructions and respond appropriately to criticism from supervisors;  (8) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (9) interact appropriately with the general public; (10) maintain socially appropriate behavior; (10) travel to unfamiliar places; and (11) use public transportation. *Id.*  Dr. Chavez explained that Mr. Silva's emotional lability made the "aforementioned [limitations] problematic" and "interferes with his interactions with others and his attention," and that Mr. Silva's hypervigilant thoughts greatly affected his ability to socially interact.  *Id.* Elsewhere in the questionnaire, Dr. Chavez assessed that Mr. Silva would miss more than four days per month from work due to his mental impairments and treatment.  Tr. 437.

The ALJ accorded partial weight to Dr. Chavez's opinion regarding Mr. Silva's "limited but satisfactory and seriously limited but not precluded abilities" required to do unskilled work, but rejected Dr. Chavez's assessed limitation that Mr. Silva would miss more than four days of work per month due to his mental impairments and therapy "due to lack of context given the claimant is not precluded from any of the listed abilities."  Tr. 19.

**B.**     <u>The ALJ Failed To Apply the Correct Legal Standards in Weighing
Dr. Chavez's Opinion and His Reasons for Discounting His Opinion
Are Not Supported by Substantial Evidence</u>

Mr. Silva argues that the ALJ erred by improperly weighing the opinion of treating

psychologist, Gerald Chavez, Ph.D.[9]  Doc. 26 at 19-26.  To begin, Mr. Silva contends that there

is nothing in the ALJ's decision to indicate that he considered the regulatory factors for

evaluating opinion evidence, as required.[10]  *Id.* at 20-21.  Next, Mr. Silva contends that the

medical record evidence the ALJ cites in support of discounting Dr. Chavez's opinion includes

only two mental status exam records and that the ALJ fails to link those records "in any

meaningful way to the limitations Dr. Chavez found."  *Id.* at 21-22.  Third, Mr. Silva contends

that the ALJ's explanation for rejecting Dr. Chavez's assessment that Mr. Silva would miss more

than four days of work per month due to his mental impairments is not supported by substantial

evidence.  *Id.* at 24-25.  Last, Mr. Silva contends that in according partial weight to Dr. Chavez's

assessment regarding Mr. Silva's "limited but satisfactory and seriously limited but not

precluded abilities," the ALJ failed to explain why he adopted certain limitations but rejected

others.  *Id.* at 25-26.

The Commissioner asserts that the ALJ properly determined that Dr. Chavez's opinion

was not entitled to controlling weight because it was not supported by any acceptable clinical or

laboratory diagnostic techniques.  Doc. 28 at 20.  The Commissioner further asserts that the

ALJ's rejection of Dr. Chavez's opinion that Mr. Silva would miss four or more days of work

---

[9] For claims filed before March 27, 2017, "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298.

[10] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017.  *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); (Doc. 19 at 4 n.3.).  However, because Mr. Silva filed his claim in 2016, the previous regulations for evaluating opinion evidence apply to this matter.  *See* 20 C.F.R. 416.927.

each month due to his mental impairments was proper because Dr. Chavez merely checked a box on a pre-printed form, failed to provide any context for this assessment, and assessed that Mr. Silva was not precluded from any of the abilities needed to do unskilled work. *Id.* at 20-21. The Commissioner also asserts that even though the ALJ cited to only two mental status exams to support discounting Dr. Chavez's opinion, the record is replete with normal mental status exams that could reasonably be found as inconsistent with Dr. Chavez's opinion. *Id.* at 21.

It is undisputed that Dr. Chavez is Mr. Silva's treating psychologist and the only treating source who provided a functional assessment of Mr. Silva's ability to do work-related mental activities.[11]  Therefore, the ALJ was required to evaluate his opinion pursuant to the two-part treating physician inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  First, the ALJ must determine whether the treating physician's opinion is entitled to controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Second, if the treating physician's opinion is inconsistent with the record or not supported by medical evidence, the opinion does not merit controlling weight but is still entitled to deference and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[11] In addition to the treatment records in the Administrative Record, Mr. Silva testified on March 28, 2019, that he continues to treat with Dr. Chavez on a weekly basis.  Tr. 49-50.

*Watkins,* 350 F.3d at 1301 (internal citations and quotations omitted); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is necessary, however, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).  "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence[.]" *Langley*, 373 F.3d at 1121.

    Here, the ALJ discussed Dr. Chavez's opinion at step four of the sequential evaluation process and acknowledged the length, nature and extent of the treatment relationship between Dr. Chavez and Mr. Silva.  Tr. 18.  The ALJ, however, did not evaluate Dr. Chavez's opinion pursuant to the two-part treating physician inquiry as he was required to do.  At step one, the ALJ did not expressly state whether he had given Dr. Chavez's opinion controlling weight.  That said, because it is clear from the ALJ's decision that he declined to give Dr. Chavez's controlling weight, this is not reversible error.  *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (finding no reversible error when the ALJ did not expressly state whether he had given a treatment physician controlling weight because the Court could tell from the decision that the ALJ declined to give controlling weight).  At step two, however, there is no evidence that the ALJ accorded any deference to Dr. Chavez's opinion as a treating source or given his area of specialty.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that the opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to

the least weight of all); *see also* 20 C.F.R. 416.927(c)(2)(ii) and (c)(5) (explaining that more weight is generally given to a treating source and to specialists who provide opinions on medical issues in their area of specialty).  Instead, the ALJ accorded partial weight to Dr. Chavez's opinion that Mr. Silva had limited but satisfactory and seriously limited, but not precluded ability to do work-related mental activities for unskilled work, and rejected Dr. Chavez's opinion that Mr. Silva would miss more than four days of work per month due to his mental impairments. Tr. 19.  The ALJ discounted Dr. Chavez's assessment of Mr. Silva's ability to do work-related mental activities by relying on two records from Rio Grande Family Medicine wherein healthcare providers indicated "essentially normal" psychiatric findings on exam.  Tr. 18.  The ALJ explained that he rejected Dr. Chavez's missing four days of work per month assessment "due to the lack of context given the claimant is not precluded from any of the listed abilities" needed to do unskilled work.  Tr. 19.

Mr. Silva takes issue with both the ALJ's reasons for the weight he accorded Dr. Chavez's opinion and the ALJ's failure to explain why he adopted certain of Dr. Chavez's assessed limitations while rejecting others.  As to the former, the Court agrees that the ALJ's reliance on two mental status exams for according only partial weight to Dr. Chavez's assessment fails to consider the full context of Mr. Silva's mental health status during the relevant period of time.  For example, the medical evidence record demonstrates that Mr. Silva consistently reported ongoing symptoms associated with and treatment for PTSD and anxiety for approximately three years by the time Dr. Chavez completed his assessment of Mr. Silva's ability to do work-related mental activities.  Tr. 300-04, 330, 348-52, 353-55, 356-58, 399-402, 403, 406-09, 426-31, 440.[12]  "It is improper for the ALJ to pick and choose among medical

---

[12] The Administrative Record demonstrates that Mr. Silva received primary health care from ABQ Health Partners and Rio Grande Family Medicine from November 18, 2015, through February 22, 2019.  329, 330, 348-52, 353-55,

reports, using portions of evidence favorable to his position while ignoring other evidence."
*Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d
382, 385-86 (7th Cir. 1984)); *see also Clifton*, 79 F.3d at 1009 (the record must demonstrate that
the ALJ considered all of the evidence and must discuss the uncontroverted evidence he chooses
not to rely upon, as well as significantly probative evidence he rejects).  Additionally, the
Commissioner's attempt to fill in the evidentiary gap on behalf of the ALJ is improper.  *See
Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Reyes v. Bowen*, 845 F.2d 242, 244
(10th Cir. 1988)) ("It is well settled the administrative agencies must give reasons for their
decisions."); *see also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("this court may
not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent
from the ALJ's decision itself.").

     As for the ALJ's rejection of Dr. Chavez's assessment that Mr. Silva would miss four
days of work each month due to his mental impairments, the ALJ's explanation relies solely on
Dr. Chavez not having assessed that Mr. Silva was unable to meet competitive work standards in
any area required for unskilled work. Tr. 19.  This is insufficient.  *See generally, Thompson v.
Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (explaining that the absence of evidence is not
evidence).  Further, the ALJ's explanation fails to account for the seriously limited, but not
precluded abilities Dr. Chavez assessed that could impact Mr. Silva's work attendance.  Here, the
ALJ appears to assume that despite the serious limitations Dr. Chavez assessed related to
Mr. Silva's ability to do work-related mental activities, that he would not be precluded *at all*
from engaging in unskilled work on a sustained and regular basis.  However, the definition of

---

356-58, 359-63, 364-68, 369-74, 375-81, 395, 399-402, 403, 406-09, 426-31, 476-83, 485-89.  Mr. Silva sought
treatment from providers at both facilities for, *inter alia*, back pain and hypertension.  *Id.*  Mr. Silva also sought
treatment and was prescribed medication for anxiety and PTSD*. Id.*

this limitation undermines the ALJ's assumption, *i.e.,* "*[s]eriously limited, but not precluded*

means ability to function in this area is seriously limited and less than satisfactory, but not

precluded *in all circumstances*." Tr. 435. In other words, there may be circumstances when a

claimant's serious limitations in certain areas may preclude their ability to perform the mental

functions necessary to meet the basic mental demands of unskilled work. Thus, the ALJ's

assumption is an improper basis for discounting Dr. Chavez's assessed limitation. Further, the

ALJ's claim that Dr. Chavez failed to provide context for his assessment ignores the signs and

symptoms Dr. Chavez indicated within the questionnaire, along with various explanations

throughout his assessment, that provide the very context that the ALJ claims is lacking. For

example, Dr. Chavez indicated that Mr. Silva had, *inter alia,* decreased energy, generalized

persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive

recollections of a traumatic experience which are a source of marked distress, persistent

disturbances of mood or affect, apprehensive expectation, emotional withdrawal or isolation,

intense and unstable interpersonal relationships and impulsive and damaging behavior, emotional

lability, and sleep disturbance. Tr. 434. The ALJ is silent in his discussion of Dr. Chavez's

opinion as to any of these signs and symptoms. In sum, the ALJ's explanation for rejecting

Dr. Chavez's assessment that Mr. Silva would miss four days of work per month due to his

mental impairments is not supported by substantial evidence.

      As to Mr. Silva's argument that the ALJ failed to explain why he accepted certain of

Dr. Chavez's assessments while rejecting others without explanation, the Court agrees that

ALJ rejected certain of Dr. Chavez's assessments in the absence of contradictory medical

evidence. This is error. *See Langley,* 373 F.3d at 1121 (holding that an ALJ may choose to

reject a treating physician's opinion only on the basis of contradictory medical evidence). For

example, Dr. Chavez assessed that Mr. Silva was *seriously limited, but not precluded* in his

ability to accept instructions and respond appropriately to criticism from supervisors, which was

consistent with both Drs. Walker's and Atkins' assessments in this area of social interaction.[13]

Tr. 76, 91, 435.  *See* 20 C.F.R. 416.927(c)(4) ("Generally, the more consistent a medical opinion

is with the record as a whole, the more weight we will give to that opinion.")  Moreover,

Dr. Atkins added that "[c]riticism from supervisor may exacerbate [Mr. Silva's] depression and

anxiety."  Tr. 91.  While the ALJ's RFC limited Mr. Silva to *occasional* interaction with

supervisors based on these assessments, the ALJ's analysis failed to address the critical question

given the medical evidence record at issue here, *i.e.,* whether Mr. Silva could interact with

supervisors *appropriately*.[14]  In other words, *less* interaction does not necessarily make for

*appropriate* interaction in light of the assessed limitations regarding Mr. Silva's social

interactions by *all* of the treating, examining and nonexamining source providers.  *See* SR 96-9p,

1996 WL 374185, at *9 (July 2, 1996) (explaining that unskilled work generally requires, *inter*

*alia,* the ability to respond *appropriately* to supervision) (emphasis added).; *see also generally*

20 C.F.R. 404.1545(c) (explaining that a limited ability in responding appropriately to

supervision, co-workers, and work pressures in a work setting may reduce ability to do past work

and other work); POMS DI 22511.005.B (describing assessment of functional areas within

parameters of appropriateness, independence, sustainability, and quality and effectiveness);

POMS DI 25025.010.B (providing example of a claimant who required excessive supervision,

---

[13] Dr. Loescher similarly concluded that Mr. Silva reported a history "consistent with difficulties interacting with others since elementary school and in his adult life as well in work settings, due primarily because of his lack of tolerance for being told what to do."  Tr. 387.  Dr. Loescher diagnosed Mr. Silva with Antisocial Personality Disorder. *Id.*

[14] Notably, both Dr. Chavez and Dr. Walker also assessed that Mr. Silva was seriously limited and moderately limited, respectively, in his ability to maintain socially appropriate behavior.  Tr. 76, 436.

had poor work quality, and punched another employee who he perceived was making fun of him supported a finding of inability to respond appropriately to supervision, coworkers, and work situations).[15]  In sum, the ALJ failed to provide an adequate explanation for not adopting Dr. Chavez's assessment that Mr. Silva was seriously limited in his ability to accept instructions and respond appropriately to criticism from supervisors and to maintain socially appropriate behavior in the workplace.

Additionally, Dr. Chavez assessed that Mr. Silva was *seriously limited but not precluded* in his ability to maintain regular attendance and be punctual within customary tolerances and in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  Tr. 435.  Dr. Walker, whose opinion the ALJ accorded great weight, similarly found in Section I that Mr. Silva was *moderately limited* in both of these areas.[16]  Tr. 76.  Significantly, these requirements are considered critical for performing unskilled work and defined as being "usually strict."  *See* POMS DI 25020.010.B.3 – *Mental Abilities Critical for Performing Unskilled Work*.  The ALJ's evaluation of Dr. Chavez's opinion fails to explain why he overlooked these uncontradicted limitations.  *Haga*, 482 F.3d at 1208 (an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment*); see also* SSR 96-8p, 1996 WL 374184, at *7 (an ALJ "must ... explain how

---

[15] Mr. Silva testified that he was terminated from his last job after becoming aggressive with his boss.  Tr. 38-40.

[16] In Section III, Dr. Walker assessed that Mr. Silva could perform unskilled work, *i.e.,* he could understand, remember, and carry out simple instructions; make simple decisions; attend and concentrate for two hours at a time; interact adequately with co-workers and supervisors, but likely not the general public; and respond appropriately to changes in a routine work setting.  Tr. 78 (compare with requirements for unskilled work at SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).  However, courts have held that a restriction to unskilled work, or some variation therein, does not adequately encapsulate a moderate limitation in the ability to complete a normal workday and workweek.  *See Tafoya v. Saul,* D.N.M. Civ. No. 19-920 CG (Doc. 26), 2020 WL 3489539, at *6-7 (D.N.M. June 26, 2020) (citing cases therein).

any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.").

For the foregoing reasons, the Court finds that the ALJ failed to properly evaluate treating psychologist Dr. Chavez's opinion and that the reasons the ALJ provided for according partial weight to his opinion are not supported by substantial evidence.  This case, therefore, require remand.

C.      **Remaining Issues**

The Court will not address Mr. Silva's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV.  Conclusion

For the reasons stated above, the Court finds Mr. Silva's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 26) is well taken and is **GRANTED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**